Alexander E. Wolf (SBN 299775)
awolf@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
T: (872) 365-7060

Gary M. Klinger (*pro hac vice* forthcoming)
gklinger@milberg.com
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
T: (866) 252-0878

Daniel O. Herrera (*pro hac vice* forthcoming)
dherrera@caffertyclobes.com
Christopher P. Dolotosky (*pro hac vice* forthcoming)
cdolotosky@caffertyclobes.com
**CAFFERTY CLOBES MERIWETHER**
**& SPRINGEL LLP**
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
T: (312) 782-4880

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STACEE SEVERINO, GAYLE BROWNLEE, and POOJA PRAKASH, individually and on behalf of all similarly situated persons, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| SHEIN US SERVICES, LLC, a Delaware Limited Liability Company; ROADGET BUSINESS PTE, LTD., a Singapore private limited company; ZOETOP BUSINESS CO., LTD., a Hong Kong private limited company; and DOES 1-10, | |
| Defendants. | |

Plaintiffs Stacee Severino, Gayle Brownlee, and Pooja Prakash ("Plaintiffs") bring this class action complaint individually and on behalf of all others similarly situated against Defendants Shein US Services, LLC, Roadget Business Pte Ltd., and Zoetop Business Co., Limited (individually, a "Defendant" and collectively, "Defendants" or "Shein"). The allegations contained in this class action complaint are based on Plaintiffs' personal knowledge of facts pertaining to themselves and upon information and belief, and further investigation conducted by Plaintiffs' counsel as to the remainder.

## I.      NATURE OF THE ACTION

1.      Shein, one of the world's largest e-commerce platforms, sells clothes and accessories to millions of consumers in the U.S. through its website www.us.Shein.com and related mobile app (collectively, the "Website").

2.      In addition to third-party products, Shein also sells through its Website clothing and accessories to U.S. consumers available exclusively (or, at minimum, predominantly) through Shein's platforms, namely Shein's exclusive brands (e.g., Mulvari, DAZY, Anewsta, GLOWMODE, MOTF, Emery Rose, Lune, Romwe, and MUSERA) and its in-house "Shein" labels (e.g., EZwear, Basics, Frenchy, Sxy, Privé, Vcay, MOD, and Curve / Petite / Maternity / Men / Kids) (hereinafter, "Shein-branded Products" or "Products").[1]

3.      Shein portrays itself as a consumer-first company that "put[s] customers at the very heart of our business" by delivering fashionable items "accessible to all."[2] However, its claimed "sales" are little more than deceptions intended to entice customers to purchase items at "discounts" relative to illusory and misleading reference prices.

4.      Shein systematically represents to its customers that they are receiving substantial discounts at marked down prices when they purchase Shein-branded Products. However, on information and belief, Shein does not offer these Products at a genuine discount. In fact, on information and belief, these Products were rarely offered and likely never sold at the full reference price—including during the

---

[1] These enumerated Products are only examples. The Products at issue in this litigation include all clothing and accessories offered on Shein's website and mobile app for which Shein is the exclusive or primary U.S. retailer.

[2] https://www.sheingroup.com/our-group#at-a-glance

CLASS ACTION COMPLAINT

preceding six months. This deceptive practice has allowed Shein to reap billions of dollars in revenues from the U.S. alone, all at the expense of unsuspecting customers who believe Shein's sales prices are genuine, discounted, bargain prices.

5.    Consumers visiting the Website who buy an item at an advertised discount from a higher comparison reference price in strikethrough text are misled. This is because the advertised reference price is not the typical and regular price charged *by Shein on the Website* in the recent past and for a substantial time. Yet Shein's use of inflated reference prices, strikethrough pricing, and discounting, all lead reasonable consumers to believe that the Products in fact had been listed for sale and sold on the Website, at the former and regular price, in the recent past, for a substantial time.

6.    Additionally, and alternatively, consumers are misled because the advertised reference price is not the market price. Indeed, because the Products are regularly available on the Website at discounted prices, the prevailing market price cannot be the higher price.

7.    On information and belief, all or nearly all the reference prices on the Website are false and misleading. They are not bona fide former or regular prices at which the Products were offered by Shein in the recent past for a substantial time. And they are not prevailing market prices. Rather, they are inflated prices posted to lure consumers into purchasing Products from Shein that typically are discounted.

8.    Beyond that, Shein's Products sold on its e-commerce stores not only have a market value lower than the promised former and regular price, the market value is also lower than the discounted "sale" price. By using false reference pricing, Shein artificially drives up demand for the Products, and by extension drives up their price. As a result, consumers receive Products worth less than the price paid. To illustrate, assume a company knows a product will sell in the marketplace at $30. But to increase revenue and capture market share, the company advertises the product as having a regular price of $100 and being on "sale" at 60% off (i.e., $60 off). Because consumers value products based on the regular price, and a purported limited-time sale conveys savings, the company can sell that $30 product for $40.

CLASS ACTION COMPLAINT

9.      As a result, consumers are deceived into spending money they otherwise would not have spent, purchasing items they would not have purchased, and/or spending more on an item than they otherwise would have absent deceptive marketing.

10.     Plaintiffs are among the many customers who were deceived by Shein's practice and purchased Products from Shein's website and/or app at fake discounted prices. Plaintiffs bring this class action lawsuit to address Shein's misleading and unlawful pricing, sales, and discounting practices.

## II.      PARTIES

11.     Plaintiff Stacee Severino is a resident of the State of California and County of Del Norte. She resided in Del Norte County at the time she made her purchases from Shein.

12.     Plaintiff Gayle Brownlee is a resident of the State of California and County of Alameda. She resided in Berkeley, California at the time she made her purchases from Shein.

13.     Plaintiff Pooja Prakash is a resident of the State of California and County of Sacramento. She resided in Sacramento County at the time she made her purchases from Shein.

14.     Defendant Shein US Services, LLC ("Shein US Services") is a Delaware corporation with its principal place of business in Los Angeles, CA. Shein US Services is the U.S. based operational arm for Shein. It process and fulfills customer purchases in the U.S., manages the online marketplace for U.S. customers, and coordinates delivery and other logistics for U.S. purchases.

15.     Defendant Roadget Business Pte Ltd. ("Roadget") is a Singapore corporation. It is a developer of the Shein app on the Apple App Store and Google Play Store, it owns and/or operates the Shein website and mobile app, and owns the Shein trademarks. Since approximately late 2021, Roadget is the parent company of Shein US Services and oversees and directs the operations of Shein's businesses, including in the United States.

16.     Defendant Roadget is the successor in interest to Defendant Zoetop Business Co., Limited ("Zoetop"), a Hong Kong SAR China Private Limited Company. Until approximately late 2021, Zoetop was the parent company of Shein US Services and oversaw and directed the operations of Shein's businesses, including in the United States.

17.     The above defendants are collectively referred to as "Shein" or "Defendants."

CLASS ACTION COMPLAINT

18.     On information and belief, Shein, through its U.S. website and app, has sold millions of units of merchandise (including the Shein-branded Products identified above) to consumers in California.

19.     Roadget (and prior to late 2021, Zoetop) owns the trademarks and brand rights to all the Shein-branded Products sold through us.Shein.com and the Shein mobile app. It also owns and/or operates us.Shein.com and Shein's mobile app.

20.     On information and belief, Shein US Services communicates with Roadget (and prior to late 2021, Zoetop) on virtually all decisions regarding its operations, including but not limited to, the pricing and marketing for all Shein-branded Products listed on us.Shein.com or the Shein mobile app, the operation of the us.Shein.com website and Shein mobile app, financial targets, and the fulfillment, distribution, and delivery of these Products to its warehouses and, ultimately, to Plaintiffs and Class members.

21.     Roadget exercises ultimate control over virtually all of the decisions referenced above.

22.     Prior to the corporate reorganization that occurred in late 2021, Zoetop communicated with Shein US Services and exercised ultimate control over virtually all the decisions referenced above.

23.     On information and belief, at all times mentioned herein, each and every Defendant was acting jointly with, or as an agent and/or employee of, each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

24.     Accordingly, there exists, and at all times herein mentioned existed, a unity of ownership between Shein US Services, Roadget, and Zoetop and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. Adherence to the fiction of the separate existence of Defendants and each of them, would, under the circumstances set forth in this Complaint, sanction fraud or promote injustice.

25.     Upon information and belief, Plaintiffs further allege that Defendants DOES 1 through 10 (collectively, the "DOE Defendants") are other parties not yet identified who have directly, indirectly,

CLASS ACTION COMPLAINT

contributorily, and/or vicariously engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual, or otherwise, of DOE Defendants are presently unknown to Plaintiffs, which therefore sues said DOE Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when the same have been ascertained.

## III.    JURISDICTION AND VENUE

26.    This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (i) there are at least 100 class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one putative class member and one Defendant are citizens of different states.

27.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district for at least one plaintiff. As set forth herein, Shein owns and operates the Website, and marketed, sold, and shipped products to purchasers located in this district, including at least one plaintiff. Additionally, Plaintiff Severino (Del Norte County) and Plaintiff Brownlee (Alameda County) reside in this district.

28.    California's long-arm statute permits the exercise of personal jurisdiction over a non-resident entity "on any basis not inconsistent with the Constitution of [California] or of the United States." *GS Labs, LLC v. Aetna, Inc., et al.,* No. 25-CV-08525-RFL, 2026 WL 904293, at *4 (N.D. Cal. Apr. 2, 2026) (citing Cal. Civ. Proc. Code § 410.10). Thus, the Court would "need only determine whether personal jurisdiction in this case would meet the requirements of due process." *Id.* (quoting *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003)). "[D]ue process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citations and quotations marks omitted).

29.    Jurisdiction is proper because Shein has established minimum contacts in California such that maintenance of this suit does not offend traditional notions of fair play and substantial justice. On information and belief, Shein US Services resides in and operates from California. Shein continuously and systematically places goods into the stream of commerce for distribution in California, maintains an

interactive commercial website, offers to ship products to California, and allows customers in California to order products. Exercising jurisdiction over Shein is fair, just, and reasonable considering the quality and nature of Shein's acts that occur in California and which affect interests located in California. Shein has purposefully availed itself of the privilege of conducting activities in California and should reasonably anticipate being haled into court in California.

## IV.    GENERAL ALLEGATIONS

### A.    Company Background

30.    Shein sells its products through its Website. It primarily sells women's clothes and accessories, along with products for men and children. Since its founding in 2012, Shein has grown to become the dominant "ultra-fast fashion" retailer with customers in over 150 countries and nearly 10,000 employees worldwide.[3] Shein has offices in over 40 offices located around the world and more than 30 nationalities represented across its workforce.[4] In 2024 alone, 6.78 million new users registered on the Shein exchange in the U.S., the U.K., France, and Germany.[5]

31.    Through its proprietary website and app, Shein generates substantial profits and sales. According to Bloomberg, Shein was projected $2 billion in global net income in 2025, nearly double its profit of $1.1 billion in 2024.[6] In the U.S. alone, Shein had almost $10 billion in sales during the first quarter of 2025.[7]

---

[3] https://m.shein.com/us/About-Us-a-117.html?cdn_rsite=cf&ref=m&rep=dir&ret=mus (last accessed April 28, 2026)

[4] https://www.sheingroup.com/our-group#at-a-glance (last accessed April 28, 2026)
[5] Id.

[6] https://www.businessoffashion.com/news/retail/shein-eyes-2-billion-profit-in-2025-despite-us-tariff-headwinds/#:~:text=Retail-,Shein%20Eyes%20$2%20Billion%20Profit%20in%202025%20Despite%20US%20Tariff,Bloomberg (last accessed April 28, 2026)

[7] https://apparelresources.com/business-news/retail/sheins-us-sales-decline-following-end-tariff-exemption/ (last accessed April 28, 2026)

CLASS ACTION COMPLAINT

32.    Shein is the owner of the Shein brand and operates the Website: us.Shein.com and the Shein mobile app. On information and belief, the advertised reference prices and sales prices are consistent across the website us.Shein.com and the Shein mobile app. While Shein offers occasional extra "discounts" or "coupons" to various customers, the advertised reference prices and sale prices are the same on both us.Shein.com and the Shein mobile app. See examples below.



*Shein website*



*Shein mobile app*

CLASS ACTION COMPLAINT

33. Shein is a direct-to-consumer retailer of Shein-branded Products. On information and belief, with rare and/or unauthorized exceptions, Shein-branded Products are available to U.S. customers only from Shein. Further, on information and belief, Shein-branded Products are primarily (if not exclusively) sold direct-to-consumer by Shein via the us.Shein.com e-commerce store and related Shein mobile app.

34. For example, if a person searches Google for "Shein," the first sponsored hit is us.Shein.com, and the first two organic hits are m.Shein.com/us/ and a link to Shein's shopping app in the Apple Store. The third organic hit is for Shein's Instagram page, @shein_us. The fourth organic hit is for Shein's shopping app on Google Play.

35. Similarly, if a person searches Google for "DAZY clothing," the displayed sponsored products are all articles of clothing via us.Shein.com. If a person searches Google for "MOTF clothing," the displayed sponsored products are all articles of clothing via us.Shein.com. If a person searches Google for "Emery Rose clothing," the displayed sponsored products are all articles of clothing via us.Shein.com. If a person searches Google for "Glowmode clothing," five of the first six sponsored products are articles of clothing via us.Shein.com. If a person searches Google for "Anewsta clothing," five of the first six sponsored products are articles of clothing via us.Shein.com.

36. Furthermore, while some of the Shein-branded Products also have standalone e-commerce websites dedicated to these brands, Shein itself owns and controls these websites.[8] As a result, on information and belief, Shein controls product pricing and there is no material difference when compared to the prices on us.Shein.com. For instance, on April 27, 2026, the DAZY Off-Shoulder Fitted Long Sleeve Shirt was advertised on both Dazy.com and us.Shein.com with a $9.89 reference price in strikethrough text and a $5.35 sale price. On April 27, 2026, the MOTF Women's 100% Linen Long Sleeve Shirt was advertised on both MOTF.com and us.Shein.com with a $43.89 strikethrough reference

---

[8] *E.g.* https://www.shopmotf.com/page/terms (stating "The Site and the App are owned by Roadget Business Pte. Ltd. and are licensed by SHEIN Distribution Corporation."); https://www.shopglowmode.com/market-us/page/terms (stating "'Glowmode', 'Company', 'we', 'us] and 'our' shall refer to Roadget Business Pte. Ltd. and/or Fashion Choice Pte. Ltd. or SHEIN Distribution Corporation or SHEIN Distribution Canada Limited"); https://www.dazy.com/page/terms (similar); https://www.anewstafashion.com/page/terms (similar); https://www.shopemeryrose.com/page/terms (similar).

CLASS ACTION COMPLAINT

price and a $25.24 sale price. And on April 27, 2026, the Emery Rose Plus Size V-Neck Raglan Sleeve Shirt was advertised on both EmeryRose.com and us.Shein.com with a $17.09 strikethrough reference price and $11.74 sale price.

37.     These are just examples. The inference is that, in the U.S., such products are predominantly if not exclusively sold by Shein via us.Shein.com and the related mobile app. And the prices charged by Shein to U.S. customers are the same regardless of sales channel.

38.     Shein also markets the unique nature of Shein-branded Products on its website. According to us.Shein.com's "About Us" page: "Consumers no longer follow a unified standard of what is considered 'fashionable' or 'beautiful.' We believe that the clothes we wear reflect our personalities and we want to empower everyone to explore and express their individuality. To do this, SHEIN creates a wide range of options to fit any mood or occasion."[9]

39.     Shein further claims its "diverse portfolio of *in-house* brands are crafted and curated to meet the needs of our customers all around the world."[10] Shein uses a variety of brands to market its products to customers in several age groups with different style preferences. Shein describes some of its brands as follows:

**SHEIN**

House brand, SHEIN, embodies the company's mission to make the beauty of fashion accessible to all. Made up of diverse collections that meet varying customer needs, the SHEIN range of products aim to enable self-expression for all. From size-inclusive ranges like SHEIN Tall, SHEIN Petite, and SHEIN Curve, to our vacation label, SHEIN Vcay, everyday basics, like SHEIN EZWear, and headturning outfits for a night out, like SHEIN Icon...There's something for everybody at SHEIN.

**DAZY**

---

[9] https://us.shein.com/About-Us-a-117.html (last accessed April 28, 2026)

[10] https://www.sheingroup.com/brands (emphasis added) (last accessed April 28, 2026).

CLASS ACTION COMPLAINT

"NOT JUST ANY GIRL"—DAZY is for the extraordinary Gen-Z IT girls. Where influencer-loved distressed denim meets your unique styling, and where the latest slouchy knits embrace your free spirit. This is fashion redefined: global trends sparking with personal flair. One tap away from making every "just threw this on" your signature look.

**MOTF**

MOTF — pronounced mo-teef — is inspired by the quiet strength and timeless beauty of nature. Like the depth of a still lake, MOTF reflects calmness, confidence, and effortless elegance. Created for modern women who value quality and simplicity, MOTF offers refined wardrobe essentials designed to move seamlessly between work and life. Every piece draws from nature's textures and tones, crafted with respect for the planet and a commitment to timeless, versatile style. MOTF embodies the philosophy of "elevated ease," crafting refined wardrobe solutions for the modern woman.

**Anewsta**

Anewsta is a premium womenswear brand designed for modern women aged 25-40, built on the core principles of "elegance, sophistication, and quality." Anewsta is an outward expression of inner grace, where every garment embodies our relentless pursuit of perfection.

The Anewsta woman is multifaceted - she's the decisive executive, the cultured art enthusiast, the discerning lifestyle connoisseur. "Let your style shine like a new star" is our promise to every woman, transforming clothing into a medium of self-expression that radiates unique brilliance in every setting.

**GLOWMODE**

GLOWMODE is a lifestyle activewear brand committed to making premium performance and stylish athleisure accessible to all. With versatile designs that transition effortlessly from studio to street, we empower you to look and feel your best in every moment. Designed for life on the

CLASS ACTION COMPLAINT

move—from workouts to rest—our pieces are made to keep up with you. GLOWMODE—for your inner glow, every day.[11]

**B.    Shein's Deceptive Pricing Scheme**

**1.    The Products Are Not Regularly Listed or Sold on the Website at the Reference Prices.**

40.    Shein's business model employs deceptive reference prices and sale prices.

41.    On information and belief, most if not all Shein-branded Products on the Website are represented as being discounted from a substantially higher reference price; during the majority of any given calendar year.

42.    On individual product listing pages or category listing pages, the supposed markdowns are represented to the consumer by prominently displaying a "crossed-out" reference price next to the sale price. Near the sale price is typically a percentage off descriptor (*e.g.*,-25%). Representative examples are shown below.

43.    To confirm Shein regularly offers Shein-branded Products at a discount sitewide or nearly sitewide, historical pricing for several proprietary products collected by a third-party tracking tool (AliPrice.com) were reviewed by Plaintiffs' counsel. The available data indicates that, while the brands below may be occasionally offered on the Website at the full reference price, the Products are available at alleged discounts the vast majority of the time.

---

[11] *Id.*

CLASS ACTION COMPLAINT

**Mulvari**

44.    For example, on April 3, 2026, the Mulvari Solid Ribbed Knit Dress was advertised on us.Shein.com with a strikethrough reference price of $25.19, a sale price of $16.76, and the descriptor "-33%".

 

45.    However, according to AliPrice.com's price tracking data, the Mulvari Solid Ribbed Knit Dress's price was consistently listed near or below the sale price of $16.76 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $25.19 to establish a misleading comparison.[12]

46.    On April 3, 2026, the Mulvari Plus Allover Print Ruffle Hem Belted Dress was advertised on us.Shein.com with a strikethrough reference price of $22.89, a sale price of $16.79, and the descriptor "-27%".

---

[12] On April 28, 2026, the item was still on sale, now with a $24.99 reference price, $15.51 sale price, and "-38%" descriptor.

CLASS ACTION COMPLAINT



47.    However, according to AliPrice.com's price tracking data, the Mulvari Plus Allover Print Ruffle Hem Belted Dress's price was consistently listed below the sale price of $16.79 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $22.89 to establish a misleading comparison.[13]

48.    Similarly, according to Microsoft Shopping's price tracking data, during the preceding twelve months, the Mulvari Plus Allover Print Ruffle Hem Belted Dress was consistently available at discounted prices with only a brief stint at the reference price to establish a misleading basis for comparison. And the item's "typical" and "median" price is $16.79.

---

[13] On April 28, 2026, the item was still on sale with a $22.89 reference price, $16.79 sale price, and "-27%" descriptor.

---

CLASS ACTION COMPLAINT

**DAZY**

49.    On April 5, 2026, the DAZY Solid Shoulder Pad Tee Y2k was advertised on us.Shein.com with a strikethrough reference price of $14.89, a sale price of $8.58, and the descriptor "-42%".




50.    However, according to AliPrice.com's price tracking data, the DAZY Solid Shoulder Pad Tee Y2k's price was consistently listed near or below the sale price of $8.58 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $14.89 to establish a misleading comparison.[14]

51.    Likewise, according to Microsoft Shopping's price tracking data, during the preceding twelve months, the DAZY Solid Shoulder Pad Tee Y2k was consistently available at discounted prices and never reached the advertised reference price.



[14] On April 28, 2026, the DAZY Solid Shoulder Pad Tee Y2k was still on sale with a $14.89 reference price, $9.08 sale price, and "-39%" descriptor.

CLASS ACTION COMPLAINT

52.    On April 5, 2026, the DAZY Women Plain Color Camisole Tank Top was advertised on us.Shein.com with a strikethrough reference price of $8.59, a sale price of $4.92, and the descriptor "-43%".

 

53.    However, according to AliPrice.com's price tracking data, the DAZY Women Plain Color Camisole Tank Top's price was consistently listed near or below the sale price of $4.92 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, *only once* reaching the full reference price of $8.59 to establish a misleading comparison.[15]

54.    Similarly, according to Microsoft Shopping's price tracking data, during the preceding twelve months, the DAZY Women Plain Color Camisole Tank Top was consistently available at discounted prices. And the item's "typical" and "median" price is $5.26.

---

[15] On April 28, 2026, the DAZY Women Plain Color Camisole Tank Top was still on sale with a $8.59 reference price, $5.21 sale price, and "-39%" descriptor.

CLASS ACTION COMPLAINT





CLASS ACTION COMPLAINT

**Anewsta**

55.     On April 5, 2026, the Anewsta Savoree Women's Elegant White Pearl Embellished Spaghetti Strap Bodycon Dress was advertised on us.Shein.com with a strikethrough reference price of $54.39, a sale price of $38.72, and the descriptor "-29%" markdown.

 

56.     However, according to AliPrice.com's price tracking data, the Anewsta Savoree Women's Elegant White Pearl Embellished Spaghetti Strap Bodycon Dress's price was consistently listed near or below the sale price of $38.72 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever (or virtually ever) reaching the full reference price of $54.39  to establish a misleading comparison.[16]

57.     Similarly, according to Microsoft Shopping's price tracking data, during the preceding twelve months, the Anewsta Savoree Women's Elegant White Pearl Embellished Spaghetti Strap Bodycon Dress was consistently available at discounted prices with only a brief stint at the reference price to establish a misleading basis for comparison.

---

[16] On April 28, 2026, the Anewsta Savoree Women's Elegant White Pearl Embellished Spaghetti Strap Bodycon Dress was still on sale with a $54.29 reference price, $30.93 sale price, and "-43%" descriptor.

CLASS ACTION COMPLAINT





58.     On April 5, 2026, the Anewsta Business Casual Oldmoney Women's Suit Set, Maillard Color Blazer Jacket + Straight Leg Pants was advertised on us.Shein.com with a strikethrough reference price of $119.79, a sale price of $87.39, and the descriptor "-27%" markdown.





CLASS ACTION COMPLAINT

59.     However, according to AliPrice.com's price tracking data, the Anewsta Business Casual Women's Suit Set, Maillard Color Blazer Jacket + Straight Leg Pants' price was consistently listed near or below the sale price of $87.39 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $119.79 to establish a misleading comparison.

60.     Similarly, according to Microsoft Shopping's price tracking data, during the preceding twelve months, the Anewsta Business Casual Women's Suit Set, Maillard Color Blazer Jacket + Straight Leg Pants was consistently available at discounted prices with only a brief stint at the reference price to establish a misleading basis for comparison.





CLASS ACTION COMPLAINT

**GLOWMODE**

61.     On April 5, 2026, the GLOWMODE Feather Fit – Sculpt Two-Tone Sports Bra was advertised on us.Shein.com with a strikethrough reference price of $23.99, a sale price of $19.19, and the descriptor "-20%" markdown.

 

62.     However, according to AliPrice.com's price tracking data, the GLOWMODE Feather Fit – Sculpt Two-Tone Sports Bra's price was consistently listed below the sale price of $19.19 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $23.99 to establish a misleading comparison.

63.     Similarly, according to Microsoft Shopping's price tracking data, during the preceding twelve months, the GLOWMODE Feather Fit – Sculpt Two-Tone Sports Bra was consistently available at discounted prices and did not reach the reference price. And the item's "typical" and "median" price is $20.00.

CLASS ACTION COMPLAINT



64.    On April 5, 2026, the GLOWMODE X Discovery Everyday Fleece Cozy Soft Lightweight Warm Tie-Dye Loose Fit Pullover Sweatshirt was advertised on us.Shein.com with a strikethrough reference price of $26.99, a sale price of $21.60, and the descriptor "-20%" markdown.




65.    However, according to AliPrice.com's price tracking data, the GLOWMODE X Discovery Everyday Fleece Cozy Soft Lightweight Warm Tie-Dye Loose Fit Pullover Sweatshirt's price was consistently listed below the sale price of $21.60 on us.Shein.com during the preceding six months.

CLASS ACTION COMPLAINT

Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $26.99 to establish a misleading comparison.

**Shein Labels**

66.    On April 5, 2026, the Shein EZwear Women Texture  Casual Loose T-Shirt and Wide-Leg Pants 2Pcs Set was advertised on us.Shein.com with a strikethrough reference price of $31.19, a sale price of $18.31, and the descriptor "-41%" markdown.



67.    However, according to AliPrice.com's price tracking data, the Shein EZwear Women Texture Casual Loose T-Shirt and Wide-Leg Pants 2Pcs Set's price was consistently listed near or below the sale price of $18.31 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever (or virtually ever) reaching the full reference price of $31.19 during that time to establish a misleading comparison.

68.    Similarly, according to Microsoft Shopping's price tracking data, during the preceding twelve months, the Shein EZwear Women Texture Casual Loose T-Shirt and Wide-Leg Pants 2Pcs Set was consistently available at discounted prices with only a brief stint at the reference price to establish a misleading basis for comparison. And the item's "typical" and "median" price was $17.02.

CLASS ACTION COMPLAINT



69.    On April 5, 2026, the Shein Privé Women High Neck Floral Print Cold Shoulder A-Line Ruffle Hem Dress was advertised on us.Shein.com with a strikethrough reference price of $17.19, a sale price of $12.23, and the descriptor "-29%" markdown.




70.    However, according to AliPrice.com's price tracking data, the Shein Privé Women High Neck Floral Print Cold Shoulder A-Line Ruffle Hem Dress's price was consistently listed below the sale price of $12.23 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $17.19 to establish a misleading comparison.

## MOTF

71.    On April 6, 2026, the MOTF Premium Slim Cami Top was advertised on us.Shein.com with a strikethrough reference price of $18.79, a sale price of $10.79, and the descriptor "-43%" markdown.



72.    However, according to AliPrice.com's price tracking data, the MOTF Premium Slim Cami Top's price was consistently listed below or near the sale price of $10.79 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the reference price of $18.79 to establish a misleading comparison.

73.     On April 6, 2026, the MOTF Women's Stand Collar Batwing Sleeve Shirt was advertised on us.Shein.com with a strikethrough reference price of $24.89, a sale price of $14.27, and the descriptor "-43%" markdown.



74.     However, according to AliPrice.com's price tracking data, the MOTF Women's Stand Collar Batwing Sleeve Shirt's price was consistently listed near or below the sale price of $14.27 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the reference price of $24.89 to establish a misleading comparison.

CLASS ACTION COMPLAINT

**Emery Rose**

75.    On April 6, 2026, the Emery Rose Solid Tank Top & Wide Leg Pants were advertised on us.Shein.com with a strikethrough reference price of $33.49, a sale price of $24.59, and the descriptor "-27%" markdown.




76.    However, according to AliPrice.com's price tracking data, the Emery Rose Solid Tank Top & Wide Leg Pants' price was consistently listed below the sale price of $24.59 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $33.49 to establish a misleading comparison.

CLASS ACTION COMPLAINT

77.    On April 6, 2026, the Emery Rose Lace See-Through Camisole & Jumpsuit Set was advertised on us.Shein.com with a strikethrough reference price of $31.49, a sale price of $21.33, and the descriptor "-32%" markdown.




78.    However, according to AliPrice.com's price tracking data, the Emery Rose Lace See-Through Camisole & Jumpsuit Set's price was consistently listed near or below the sale price of $21.33 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $31.49 to establish a misleading comparison.

**Lune**

79.    On April 3, 2026, the Lune Solid Color Large Round Neck Pleated T-Shirt, Casual was advertised on us.Shein.com with a strikethrough reference price of $12.49, a sale price of $6.79, and the descriptor "-46%" markdown.

CLASS ACTION COMPLAINT



80.     However, according to AliPrice.com's price tracking data, the Lune Solid Color Large Round Neck Pleated T-Shirt, Casual's price was consistently listed near the sale price of $6.79 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $12.49 during that time to establish a misleading comparison.

81.     On April 6, 2026, the Lune Women's Abstract Print Sleeveless Dress was advertised on us.Shein.com with a strikethrough reference price of $17.29, a sale price of $11.52, and the descriptor "-33%" markdown.





CLASS ACTION COMPLAINT

82.    However, according to AliPrice.com's price tracking data, the Lune Women's Abstract Print Sleeveless Dress's price was consistently listed near or below the sale price of $11.52 on us.Shein.com during the preceding six months. Further, the price tracking data shows the product was consistently discounted on us.Shein.com during the preceding six months, without ever reaching the full reference price of $17.29 to establish a misleading comparison.

83.    On information and belief, these are not new or isolated sales practices by Shein, but continued regularly throughout 2022-2026, and likely years earlier.

84.    Shein employs these advertising practices to falsely convey that the product was listed or sold on the Website at the reference price in the recent past and for a substantial period of time, and the product is valued at the reference price, but is now being sold to the customer at a genuine discount.

85.    In other words, reasonable consumers understand the strikethrough reference price and sale price to convey that the product was listed or sold on the Website at the reference price in the recent past and for a substantial period of time but is now being offered to the customer at a substantial discount. Reasonable consumers also expect the product to be valued in the market at the former or regular price, such that consumers are receiving a genuine bargain.

86.    However, on information and belief, the reference price is false and misleading because the products are usually discounted.

**2.    The Reference Price is not the Market Price.**

87.    Separately, the reference prices advertised on Shein's retail channels are not the prevailing market prices of the products.

88.    As explained above, on information and belief, Shein-branded Products were primarily sold direct-to-consumer by Shein via the us.Shein.com e-commerce store and Shein app, and they were sold exclusively by Shein. This information is in Shein's possession and requires discovery to confirm.

89.    For the Products sold to U.S. customers exclusively through the us.Shein.com e-commerce store and Shein mobile app, the prevailing market price is necessarily the discounted price because Shein is the only seller of these proprietary products.

CLASS ACTION COMPLAINT

90.     To the extent the Products are also sold to U.S. customers through Shein's other websites, the prevailing market price is still the discounted price. As explained above, on information and belief, the advertised prices on Shein's various brand-specific websites mirror the prices on us.Shein.com and the Shein mobile app.

91.     To the extent (if any) that bona fide third parties sell the Products to U.S. customers, on information and belief, Shein's advertised reference prices are higher than the prevailing market prices for the identical products. Because Shein consistently sells the products at prices significantly (i.e., 30% or more) lower than its advertised former prices, there is no reasonable basis to believe that Shein consistently sells its products at prices below the prevailing market prices. Economic principles dictate that in competitive markets the actual prices offered by vendors selling the same item tend to converge on the market price.

92.     On information and belief, Shein's advertised reference prices are cherrypicked and unsubstantiated, or are outdated, and thus not representative of the prevailing market prices. Shein does not independently verify that the reference prices are the prevailing market prices at which the products are listed for sale by Shein for a substantial period of time and in substantial quantities. And Shein does not update the references prices daily.

93.     Notably, several foreign authorities allege that Shein used fake discounts to deceive its customers. For instance, in May 2025, the European Union issued a statement that Shein was using fake discounts to dupe customers into purchasing their products at perceived bargains.[17] Likewise, in July 2025, the French antitrust authority (DGCCRF) fined Shein 40 million euros for using fake discounts and other deceptive business practices to mislead its customers.[18] After a review of Shein's website from October 1, 2022 to August 31, 2023, it found that 57% of advertised deals for all products sold through Shein's platforms were not, in fact, offering a lower price; 19% had less of a discount than advertised; and 11% were in fact price increases.[19]

---

[17] https://www.bbc.com/news/articles/c62vq1mnndno (last accessed April 28, 2026).
[18]     https://www.reuters.com/sustainability/boards-policy-regulation/france-fines-shein-40-million-euros-deceptive-business-practices-2025-07-03/ (last accessed April 28, 2026).
[19] Id.

CLASS ACTION COMPLAINT

**C.    Plaintiffs' Purchases from the Website**

*Plaintiff Severino*

94.    Plaintiff Severino repeatedly purchased products on sale from Shein's e-commerce website, us.Shein.com.

95.    On or about early March 2026, Plaintiff Severino purchased an Emery Rose Plus Size Women Casual Floral Print Dress (Order # GSU16R42M000VCK). According to Plaintiff Severino's order confirmation, she purchased the product on sale for $10.81 with an advertised reference price of $18.59 in strikethrough text. Based on the current website and available data, the product was also advertised with a "-__%" descriptor.[20] The product was shipped to Plaintiff in California.

96.    On or about February 4, 2026, Plaintiff Severino purchased an Emery Rose 2pcs Set Plus Size Women Leopard Print outfit (Order # GSU15B42N000NRV). According to Plaintiff Severino's order confirmation, she purchased the product on sale for $22.57 with an advertised reference price of $32.39 in strikethrough text. Based on the current website and available data, the product was also advertised with a "-__%" descriptor. The product was shipped to Plaintiff in California.

97.    On or about December 5, 2025, Plaintiff Severino purchased a Shein Frenchy Plus Size Vintage Ditsy Floral Contrast Lace Dress (Order # GSU1QH421003TJS). According to Plaintiff Severino's order confirmation, she purchased the product on sale for $16.07 with an advertised reference price of $29.89 in strikethrough text. Based on the current website and available data, the product was also advertised with a "-__%" descriptor. The product was shipped to Plaintiff in California.

98.    On or about June 9, 2025, Plaintiff Severino purchased a Shein EZwear Plus Size Heart Tie-Dye Print Short Sleeve T-Shirt (Order # GSU1U6422002WT4). According to Plaintiff Severino's order confirmation, she purchased the product on sale for $7.92 with an advertised reference price of $13.22 in strikethrough text. Based on the current website and available data, the product was also advertised with a "-__%" descriptor. The product was shipped to Plaintiff in California.

---

[20] The current listing is available here: https://us.shein.com/EMERY-ROSE-Plus-Size-Women-Casual-Floral-Print-Loose-Round-Neck-Short-Sleeve-Dress-Spring-Summer-Plus-Size-Floral-Dress-Summer-Plus-Size-Dress-Floral-Dress-Women-Back-To-School-Homecoming-Sundress-Night-Out-Going-Out-Tops-Vacation-Outfits-Woman-Chic-Dress-Flower-p-90734814.html

CLASS ACTION COMPLAINT

99.     On or about May 19, 2025, Plaintiff Severino purchased a Shein EZwear Plus Women's Pocketed Flare Casual Versatile Denim Jeans (Order # GSU12L42U00N5F9). According to Plaintiff Severino's order confirmation, she purchased the product on sale for $20.58 with an advertised reference price of $27.89 in strikethrough text. Based on the current website and available data, the product was also advertised with a "-__%" descriptor. The product was shipped to Plaintiff in California.

100.     On or about April 9, 2025, Plaintiff Severino purchased a Shein VCAY Plus Ditsy Floral Print Ruffle Hem Summer Boho Dress (Order # GSU11R42M000KKB). According to Plaintiff Severino's order confirmation, she purchased the product on sale for $8.68 with an advertised reference price of $12.99 in strikethrough text. Based on the current website and available data, the product was also advertised with a "-__%" descriptor. The product was shipped to Plaintiff in California.

101.     Plaintiff proceeded to purchase the products with the understanding that she was receiving all advertised discounts off the former and regular prices charged by Shein on its U.S. website.

102.     Plaintiff thus viewed and relied on the website's purported current and temporary discounts. She relied on the above representations that the products (a) had a former and regular price of the stated reference price, (b) had been offered for sale on the Website at the stated reference price in the recent past, on a regular basis, and for a substantial time, and (c) were truly being sold at a substantial discount, such that the products were valued at the false reference price.

103.     The above-listed products Plaintiff purchased were not substantially marked down, and any discount was exaggerated, as shown above.

104.     On information and belief, for at least the six-month period prior to Plaintiff's purchases, and months and years more, Shein rarely, if ever, offered any of the discounted items on its Website at the reference prices.

105.     Indeed, according to Microsoft Shopping's price tracker, during the past twelve months, the Emery Rose Plus Size Women Casual Floral Print Dress was consistently discounted and did not reach the advertised reference price. Further, the item's "normal" and "median" price was $13.25.



106.    On information and belief, most if not all the foregoing products were sold to U.S. customers exclusively by Shein. Alternatively, on information and belief, Shein is the primary seller of the foregoing products to U.S. customers.

107.    Plaintiff would not have purchased the items at the advertised price, or would not have paid as much as she did, had Shein been truthful. Plaintiff was persuaded to make her purchases because of the misleading discounts based on false reference prices.

108.    Plaintiff continues to be interested in purchasing clothing at discounted prices, but she will be unable to trust and rely on Shein's advertising, and so will not purchase the products from Shein. Absent injunctive relief, Plaintiff cannot know whether Shein's advertised reference prices represent honest prices at which the products were listed for sale, on a regular basis for a reasonably substantial period of time, or if Shein's sales are perpetual.

***Plaintiff Brownlee***

109.    Plaintiff Brownlee purchased multiple products on sale from Shein via the Shein mobile app.

CLASS ACTION COMPLAINT

110.   In or about December 2025, Plaintiff Brownlee purchased a Mulvari Contrast Binding Letter and Cartoon Graphic Bodysuit[21] via Shein's mobile app (Order # GSU1Q928N004S56). Plaintiff Brownlee purchased the product on sale for $7.69. Based on the current website and available data, Plaintiff Brownlee would have seen the following representations on the website: reference price of about $11.69 in strikethrough text, adjacent sale price of $7.69, and a "-__%" descriptor. Further, according to Microsoft Shopping's price tracking data, during the preceding 12 months, the Mulvari Contrast Binding Letter and Cartoon Graphic Bodysuit was consistently discounted and did not reach the advertised reference price. Rather, the product's "typical" and "median" price was $7.25.



111.   Plaintiff Brownlee also purchased the following items, among others, via Shein's mobile app on the following dates:  Cosmina black dress (Order # GSU1W428M00NBFJ) on sale for $5.76 in about September 2025; Slaydiva Women Plus Size T-Shirt[22] (Order # GSU1CG28M00NNGM) on sale

---

[21] The current listing for the Mulvari bodysuit is available here: https://us.shein.com/Mulvari-Contrast-Binding-Letter-and-Cartoon-Graphic-Bodysuit-p-2383824.html.
[22] The current listing for the Slaydiva Women Plus Size T-Shirt  is available here: https://us.shein.com/Women-Plus-Size-T-Shirt-With-Music-Festival,-Easter,-St.-Patrick%27s-Day,-Western,-Nomadic,-Birthday-Party,-Graduation-Season,-Student,-Daily-Wear,-All-Match,-Casual,-

CLASS ACTION COMPLAINT

for $11.37 in about August 2025; BamGleam Women Ombre Striped Shirt on sale for $10.14 with an advertised reference price of $16.99 in about October 2025; and BamGleam Women's Casual Colorful Striped Shirt on sale for $11.46 with an advertised reference price of $17.29 in about October 2025. While additional pricing information is not readily available, Based on the current website and available data, Plaintiff Brownlee would have seen all products advertised with a reference price in strikethrough text, an adjacent sale price, and a "-__%" descriptor.

112.    Plaintiff proceeded to purchase the products with the understanding that she was receiving all advertised discounts off the former and regular prices charged by Shein on its U.S. Website.

113.    Plaintiff thus viewed and relied on Shein's purported current and temporary discounts. She relied on the above representations that the products (a) had a former and regular price of the stated reference price, (b) had been offered for sale on the U.S. Website at the stated reference price in the recent past, on a regular basis, and for a substantial time, and (c) were truly being sold at a substantial discount, such that the products were valued at the false reference price.

114.    The above-listed products Plaintiff purchased were not substantially marked down, and any discount was exaggerated, as shown above.

115.    On information and belief, for at least the six-month period prior to Plaintiff's purchases, and months and years more, Shein rarely, if ever, offered any of the discounted items on its Website at the reference prices.

116.    On information and belief, most if not all the foregoing products were sold to U.S. customers exclusively by Shein. Alternatively, on information and belief, Shein is the primary seller of the foregoing products to U.S. customers.

117.    Plaintiff would not have purchased the items at the advertised price, or would not have paid as much as she did, had Shein been truthful. Plaintiff was persuaded to make her purchases because of the misleading discounts based on false reference prices.

118.    Plaintiff continues to be interested in purchasing clothing at discounted prices, but she will be unable to trust and rely on Shein's advertising, and so will not purchase the products from Shein.

Vacation,-Cruise-Travel,-Beach,-Sunbathing,-Fashionable,-Streetwear,-Butterfly,-Letter,-Leopard-Print-Designs,-Summer-2025-New-Arrival-p-68259579.html

Absent injunctive relief, Plaintiff cannot know whether Shein's advertised reference prices represent honest prices at which the products were listed for sale, on a regular basis for a reasonably substantial period of time, or if Shein's sales are perpetual.

***Plaintiff Pooja Prakash***

119.    Plaintiff Prakash purchased multiple products on sale from Shein via the Shein mobile app.

120.    On May 27, 2024, Plaintiff Prakash purchased a Shein VCAY Women's Solid Color Lace Patchwork Holiday Casual Cami Dress and a Shein VCAY Spliced Soluble Lace & Ruffle Hem Cami Dress on sale for $16.19 and $16.29, respectively (Order # GSUNGE060000VEE). That same day, she also purchased a Shein BAE Lace Bustier Cami Bodysuit on sale for $6.69 (Order # GSUNGE060000VEJ) and a Shein Essnce High Waist Cut Out Ripped Raw Hem Skinny Jeans[23] on sale for $13.66 (Order #GSUNGE060000VEV). While additional pricing details are not readily available, based on the current website and available data, Plaintiff Prakash would have seen all products advertised with a reference price in strikethrough text, an adjacent sale price, and a "-__%" descriptor.

121.    In or about May 2025, Plaintiff Prakash purchased the following products (Order # GSU12506W00M3EH):

a.    Base Rule Shein Plus Letter Graphic Racer Back Pajama Nightdress – advertised with a $4.37 sale price, a $5.59 strikethrough reference price, and a "-__%" descriptor.

b.    Base Rule Shein Plus Lace Trim Knot Side Cami Nightdress – advertised with a $10.95 sale price, a $14.39 strikethrough reference price, and a "-__%" descriptor.

122.    Plaintiff proceeded to purchase the products with the understanding that she was receiving all advertised discounts off the former and regular prices charged by Shein on its U.S. Website.

123.    Plaintiff thus viewed and relied on the Website's purported current and temporary discounts. She relied on the above representations that the products (a) had a former and regular price of

---

[23] The current listing for the Shein Essnce High Waist Cut Out Ripped Raw Hem Skinny Jeans (product appears to be renamed) is available here: https://us.shein.com/SHEIN-Essnce-Cut-Out-Ripped-Raw-Hem-Skinny-Jeans-p-11269236.html (showing a $31.59 strikethrough reference price, a $20.14 sale price, and "-36%") (last accessed April 28, 2026).

CLASS ACTION COMPLAINT

the stated reference price, (b) had been offered for sale on the Website at the stated reference price in the recent past, on a regular basis, and for a substantial time, and (c) were truly being sold at a substantial discount, such that the products were valued at the false reference price.

124. The above-listed products Plaintiff purchased were not substantially marked down, and any discount was exaggerated, as shown above.

125. On information and belief, for at least the six-month period prior to Plaintiff's purchases, and months and years more, Shein rarely, if ever, offered any of the discounted items on its Website at the reference prices.

126. Indeed, according to Microsoft Shopping's price tracker, during the past twelve months, the Shein Essence High Waist Cut Out Ripped Raw Hem Skinny Jeans was consistently discounted and did not reach the advertised reference price. And the item's historical "median" price was $15.97.



127. On information and belief, most if not all the foregoing products were sold to U.S. customers exclusively by Shein. Alternatively, on information and belief, Shein is the primary seller of the foregoing products to U.S. customers.

CLASS ACTION COMPLAINT

128.    Plaintiff would not have purchased the items at the advertised price, or would not have paid as much as she did, had Shein been truthful. Plaintiff was persuaded to make her purchases because of the misleading discounts based on false reference prices.

129.    Plaintiff continues to be interested in purchasing clothing at discounted prices, but she will be unable to trust and rely on Shein's advertising, and so will not purchase the products from Shein. Absent injunctive relief, Plaintiff cannot know whether Shein's advertised reference prices represent honest prices at which the products were listed for sale, on a regular basis for a reasonably substantial period of time, or if Shein's sales are perpetual.

**D.    Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value**

130.    Academic studies support the effectiveness of Shein's deceptive pricing scheme.

131.    "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[24] Thus, "empirical studies indicate that, *as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases*."[25]   Indeed, the Ninth Circuit observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos v. Kohls*, No. 11-55793 (9th Cir. May 21, 2013).

132.    "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[26] According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[27]

---

[24] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

[25] *Id.* at 56 (emphasis added).

[26] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).

[27] *Id.*

133. Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value . . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain."[28]

134. "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[29]

135. "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[30]  This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[31]

136. One study quantified this economy injury, concluding that "fake list prices have a strong influence on purchase outcomes, with a *1-dollar increase in the list price having the same positive effect on purchase likelihood as a 77-cent decrease in the actual selling price*."[32]

137. Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

**E.      Consumers Suffered Economic Harm**

138. Shein's discounted products sold on the Website have a market value lower than the promised "regular" price, and as a result, consumers were harmed. As explained above, the reference

---

[28] Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

[29] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

[30] Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product, 6 J. of App'd Bus. Res. 1 (1990).

[31] *Id.*

[32] Donald Ngwe, *Fake Discounts Drive Real Revenues in Retail*, Harvard Bus. Sch. (Oct. 14, 2017).

CLASS ACTION COMPLAINT

prices are misleading and the products are regularly discounted. Accordingly, Shein represented that the products had a market value of the higher reference price, but consumers did not receive products valued at that price.

139. Consumers also paid a "price premium" for the products. If the reference prices were omitted from product listings, then consumers would not have paid as much as they did for the products (or would not have purchased the products), and Shein would not have been able to charge the prices it ultimately did.

140. By using false reference pricing, Shein artificially drives up demand for the products, and by extension drives up the price of the products. As a result, consumers received a product worth less than the price paid. Reasonable consumers would not have paid the prices charged had they known that the products were rarely offered on the Website (or alternatively the marketplace) at the reference prices, or that the products are routinely discounted.

141. Again, an example illustrates the point. Assume a company knows a product will sell in the marketplace at $30. But to increase revenue, the company advertises the product as having a "regular" price of $100 and being on "sale" at 60% off (*i.e.*, $60 off). Because consumers value products based on the regular price, and a sale conveys additional savings, the company can sell that $30 product for $40. Shein has done so.

**F.      Shein's Deceptive Pricing Practice Violates Federal Law**

142. The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes like the ones employed by Shein are deceptive practices that violate the FTCA.

143. Pursuant to 16 C.F.R. § 233.1, entitled Former Price Comparisons:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the ***former price*** is the actual, bona fide price at which the article was offered to the public on a ***regular basis*** for a ***reasonably substantial period of time***, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an ***artificial, inflated price*** was established for the purpose of enabling the

CLASS ACTION COMPLAINT

subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a *reasonably substantial period of time*, in the *recent*, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level— $7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" *This is obviously a false claim*. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he *never offered the article at all*; he might feature a price which was *not used in the regular course of business*, or which was *not used in the recent past* but at some *remote period in the past*, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was *not maintained for a reasonable length of time*, but was immediately reduced.

144.    The FTCA also prohibits the pricing scheme employed by Shein regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price. Under 16 C.F.R. § 233.1:

(e) If the former price is set forth in the advertisement, *whether accompanied or not* by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

145.    The FTCA also prohibits retailers from offering fake limited duration sales. See 16 C.F.R. § 233.5 which provides:  "[Retailers] should not . . . make a 'limited' offer which, in fact, is not limited."

CLASS ACTION COMPLAINT

**G.      Class Action Allegations**

146.    Plaintiffs bring this action on behalf of themselves and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seek certification of the following class:

**Nationwide Class:**
All persons in the United States who purchased one or more items from the us.Shein.com or Shein mobile app e-commerce stores, during the Class Period, at a discount from a higher advertised reference price.

**California Class:**
All persons in California who purchased one or more items from the us.Shein.com or Shein mobile app e-commerce stores, during the Class Period, at a discount from a higher advertised reference price.

147.    The Nationwide Class and California Class are collectively referred to as the "Class." Excluded from the Class are Shein, the officers and directors of the Shein at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Shein has or had a controlling interest. Also excluded from the Class are persons or entities that purchased products from Shein for purposes of resale.

148.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date a class is certified.[33]

149.    Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery. In particular, Plaintiffs reserve the right to propose subclasses based on time period, product exclusivity, and sales channels.

150.    **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiffs at

---

[33] The Class Period begins at minimum 4 years from the date of filing of this action, but based on tolling, may extend beyond that date.

CLASS ACTION COMPLAINT

this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiffs allege that there are in excess of 500 members of the Class.

151.    **Typicality.** Plaintiffs' claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Shein's course of conduct as described herein.

152.    **Adequacy of Representation.** Each Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs have retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiffs and their counsel intend to diligently prosecute this action.

153.    **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a.  Whether, during the Class Period, Shein advertised false reference prices on products offered on the Website.

b.  Whether, during the Class Period, Shein advertised price discounts from false reference prices on products offered on the Website.

c.  Whether the products listed on Shein's Website during the Class Period were offered at their reference prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their reference prices.

d.  Whether Shein's deceptive pricing scheme using false reference prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq.*

e.  Whether Shein's deceptive pricing scheme using false reference prices constitutes false advertising in violation of the California False Advertising Law under Business & Professions Code § 17500, *et seq.*

CLASS ACTION COMPLAINT

 f. Whether Shein's use of false reference prices on products offered on their Website during the Class Period was material.

 g. Whether Shein had a duty to conspicuously disclose to customers that the reference prices were false former/regular prices.

 h. Whether the members of the Class are entitled to damages and/or restitution.

 i. Whether injunctive relief is appropriate and necessary to enjoin Shein from continuing to engage in false or misleading advertising.

 j. Whether Shein's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

154. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Each Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

155. **Substantial Similarity**. The products at issue in the action are substantially similar in all material respects. Namely, the products were all advertised with a misleading reference price in

CLASS ACTION COMPLAINT

strikethrough text and a misleading sale price. The products are also all sold by Shein on the Website and fall under the umbrella of clothing and accessories.

## V.     TOLLING OF THE STATUTE OF LIMITATIONS AND DELAYED DISCOVERY

156.     All applicable statutes of limitations have been tolled by the delayed discovery doctrine. Plaintiffs and Class members could not have reasonably discovered Shein's practice of running perpetual sales, based on deceptive reference prices and sale prices, at any time prior to commencing this class action litigation.

157.     A reasonable consumer viewing the Website on multiple occasions would simply believe that a product is temporarily discounted. Short of visiting and checking the Website daily for many months, a reasonable consumer would not suspect that Shein's sales and pricing practices were false and misleading. Nor would a reasonable consumer be able to ascertain the market value of the products being sold absent extensive investigation.

158.     Plaintiffs did not learn of Shein's deceptive practices alleged herein until retaining counsel and commencing this action.

159.     As a result, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

### (On Behalf of the California Class Against All Defendants)

160.     Plaintiffs restate the preceding allegations as if set forth herein.

161.     California Business and Professions Code section 17200 *et seq.*, known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

*Fraudulent*

162.     Under the UCL, a business act or practice is "fraudulent" if it is likely to deceive members of the consuming public.

163. Here, members of the public are likely to be deceived by Shein's conduct as alleged above. Among other things, Shein affirmatively misrepresented the reference prices of products, which thereby misled and deceived consumers into believing that they were buying products at substantially discounted prices. Shein's deceptive marketing practice gave consumers the false impression that its products were regularly listed or sold on the Website for a substantially higher price in the recent past than they actually were and thus led to the false impression that the products were worth more than they actually were.

164. Shein's representations that the products were on sale, that the products had a specific former and regular prices, and that consumers were receiving genuine discounts from the reference prices, were false and misleading.

165. In addition, Shein had a duty to disclose the truth about its pricing deception, including, among other things, that the reference prices advertised and published on its Website were not, in fact, prices at which Shein's items were listed or sold on the Website in the recent past for a reasonably substantial period of time, but in truth, the products rarely, if ever, were offered or sold at the advertised reference prices. Members of the public, therefore, were also likely to be deceived by Shein's failure to disclose material information.

166. Shein's advertising was fraudulent because it deceives consumers into believing they are receiving a product that is worth more than it actually is.

167. Shein's representations were materially misleading to Plaintiffs and other reasonable consumers. Consumers are influenced by price, including significant price reductions, as employed by Shein.

168. Plaintiffs relied on Shein's misleading representations and omissions, as detailed above, believing they were receiving a genuine and temporary discount from the advertised reference price.

169. Absent Shein's misrepresentations, Plaintiffs and the Class would not have purchased the items they purchased from Shein, or, at minimum, they would not have paid as much for the items as they ultimately did. Plaintiffs and the Class's reliance was a substantial factor in causing them harm.

CLASS ACTION COMPLAINT

170. Had the omitted information been disclosed, Plaintiffs would have been aware of it and reasonably would have behaved differently. Among other things, Plaintiffs would not have purchased the items they purchased from Shein, or, at minimum, would not have paid as much for the items as they did.

171. As a result of Shein's fraudulent business acts and practices, Shein has and continues to fraudulently obtain money from Plaintiffs and members of the Class.

*Unfairness*

172. Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

173. Shein's deceptive marketing gave consumers the false impression that the products were regularly listed or sold on the Website for a substantially higher price in the recent past than they were and, thus, led to the false impression that Shein's products were worth more than they were.

174. Shein's conduct was and continues to be of no benefit to purchasers of the products, as it is misleading, unfair, unlawful, and injurious to consumers. It is also against public policy, as it harms fair competition. For example, the federal Lanham Act includes prohibitions on "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 41 U.S.C. § 1125(a). Similarly, the FTCA and implementing regulations prohibit advertising a former price "for the purpose of establishing a fictitious [] price on which a deceptive comparison might be based" (16 C.F.R. § 233.1) and prohibit "offer[ing] an advance sale under circumstances where they do not in good faith expect to increase the price at a later date" (16 C.F.R. § 233.5). Shein is siphoning sales away from sellers who compete fairly on price and do not promote fake regular prices and discounts. Further, there is no benefit to consumers who pay a sale price that is actually a regular price.

175. The harm to Plaintiffs and members of the Class outweighs the utility of Shein's practices. There were reasonably available alternatives to further Shein's legitimate business interests, other than the unfair conduct described herein.

CLASS ACTION COMPLAINT

176.    As a result of Shein's unfair business acts and practices, Shein has and continues to unfairly obtain money from Plaintiffs and members of the proposed Class.

**Unlawful**

177.    A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such action borrows violations of other laws and treats these violations as unlawful practices independently actionable under the UCL.

178.    By engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Shein engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations. Specifically, as detailed herein, Shein violated 16 C.F.R. §§ 233.1 and 233.5, and California Business & Professions Code sections 17501.

*        *        *

179.    In the alternative to those claims seeking remedies at law, Plaintiffs and class members allege that there is no plain, adequate, and complete remedy that exists at law to address Shein's unlawful and unfair business practices. The legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). For example, equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense. Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution

CLASS ACTION COMPLAINT

would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard, showing, and necessary elements for a violation of the UCL "unlawful" and "unfair" prongs are different from those that govern legal claims.

180.    Plaintiffs, on behalf of themselves and the Class, seek restitution and restitutionary disgorgement of all moneys received by Shein through the conduct described above.

181.    Plaintiffs, on behalf of themselves and the Class, seek an injunction from this Court prohibiting Shein from engaging in the patterns and practices described herein, including putting a stop to the deceptive advertisements and false reference prices in connection with the sale of products on the website. Plaintiffs and the Class are entitled to injunctive relief. On information and belief, the dissemination of Shein's false and misleading advertising is ongoing.

**<u>SECOND CAUSE OF ACTION</u>**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. &**

**PROF. CODE § 17500, *et seq.***

**(On Behalf of the California Class Against All Defendants)**

182.    Plaintiffs restate the preceding allegations as if set forth herein.

183.    The California False Advertising Law, codified at California Business & Professions Code section 17500, *et seq.* (the "FAL") provides, in relevant part, that it is unlawful for any business, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

184.    A separate section of the FAL, Cal Bus. & Prof. Code § 17501, provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is

50

at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a ***former price*** of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined within ***three months next immediately preceding*** the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

185.    As used in Cal Bus. & Prof. Code § 17501:

- The term "prevailing market price" refers to the "retail [price] if the offer is at retail." *Id.*

- The term "advertised thing" refers to the exact same product offered—***not*** an equivalent or similar product. *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features . . . the market and therefore the market price is potentially determined on the basis of sales of ***that item only***.") (emphasis added).

- The term "'former price' . . . includes but is not limited to the following words and phrases when used in connection with advertised prices; 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' 'was ___ now ___,' '___ % off.'" 4 Cal. Code Regs., § 1301 (emphasis added).

- The "the three-month period is properly construed as a '***rolling***' period, that is, one whose beginning and end changes each day, thus requiring a ***daily recalculation*** of the prevailing market price during the three-month period." *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 416 n.26 (2019) (emphasis added).

186.    Shein violated Cal Bus. & Prof. Code § 17500.

187.    Shein violated Cal Bus. & Prof. Code § 17501.

188.    As explained above, Shein routinely disseminated false and misleading reference prices on the Website for the products, including to Plaintiffs. Shein rarely or never offered products on the Website at the reference prices within the three months immediately preceding the publication of the reference prices. Additionally, the reference prices shown were not the prevailing market prices for the products in the three months immediately preceding the publication.

CLASS ACTION COMPLAINT

189. Shein did not verify that the advertised reference prices were the prevailing market prices within the preceding three months. On information and belief, Shein had no policies or procedures to verify and update the reference prices on a daily basis.

190. Shein's marketing gave consumers the false impression that the products were regularly offered and sold for a substantially higher price in the recent past than they were and, thus, led to the false impression that Shein's products were worth more than they were.

191. Shein knew that its advertised reference prices for the products sold on its Website were untrue and/or misleading. Shein knew that such products had rarely, if ever, been offered or sold on its Website at the reference prices.

192. As a direct and proximate result of Shein's misleading and false advertisements, Plaintiffs and members of the Class have suffered injury in fact and have lost money.

193. Plaintiffs and Class members are entitled to injunctive relief. On information and belief, the dissemination of Shein's false and misleading advertising is ongoing.

194. In the alternative to those claims seeking remedies at law, Plaintiffs and Class members allege that there is no plain, adequate, and complete remedy that exists at law to address Shein's unlawful and unfair business practices. The legal remedies available to Plaintiffs are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). For example, equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense. Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th

CLASS ACTION COMPLAINT

163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard, showing, and necessary elements for a violation of the FAL under Cal Bus. & Prof. Code § 17501 are different from those that govern legal claims.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, *et seq.*

**(On Behalf of the California Class Against All Defendants)**

195.    Plaintiffs restate the preceding allegations as if set forth herein.

196.    The Consumer Legal Remedies Act, Cal. Civ. Code sections 1750 *et seq.* (the "CLRA"), is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

197.    Plaintiffs and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Shein's sale of products on the Website to Plaintiffs and the Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code section 1761(a).

198.    Shein violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of Shein's products:

a.   Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13))

b.   Advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9))

c.  Misrepresenting that goods are of a particular standard, quality, or grade (Cal. Civ. Code § 1770(a)(7))

d.  Representing that goods do have characteristics they do not actually have (Cal. Civ. Code § 1770(a)(5))

199.    Regarding section 1770(a)(13), Shein made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed in that Shein's products were rarely, if ever, offered for sale and/or sold on the Website at the higher reference prices, let alone on a regular basis for a reasonably substantial period of time and (b) the advertised reference prices were not prevailing market prices because, on information and belief, the products were not predominantly offered or sold on the Website (or in the marketplace) at the reference prices for a reasonably substantial period of time.

200.    Regarding section 1770(a)(9), (7), and (5), Shein advertised products on the Website with the "intent not to sell" them as advertised, and misrepresented characteristics and standards because, as explained herein, (a) the reference prices on the website misled customers into believing (i) the products were previously offered for sale and/or sold on the Website at the higher reference prices on a regular basis for a reasonably substantial period of time, and (ii) the products were valued in the market at the advertised reference prices but were being sold at a genuine bargain, and (b) Shein falsely represents the products as temporarily discounted when in truth the discount never expires or is effectively reinstituted upon expiration.

201.    In addition, Shein had a duty to conspicuously disclose the truth about its pricing deception, including that the reference prices advertised on the Website were not prices at which Shein's items were regularly listed or sold on the Website in the recent past, and in truth, Shein's products are typically not offered or sold on the Website at the advertised reference prices. Reasonable consumers were likely to be deceived by Shein's failure to disclose material information.

202.    Plaintiffs and the Class reasonably relied on Shein's representations. Absent Shein's misrepresentations, Plaintiffs and the Class would not have purchased the items they purchased from

CLASS ACTION COMPLAINT

Shein, or, at the very least, they would not have paid as much for the items as they did. Plaintiffs and the Class's reliance was a substantial factor in causing them harm.

203. Had the omitted information been disclosed, Plaintiffs and the Class reasonably would have been aware of it and behaved differently. Among other things, Plaintiffs and the Class would not have purchased the items they purchased from Shein or, at the very least, would not have paid as much for the items as they did.

204. Plaintiffs, through counsel, are providing notice to Shein pursuant to Cal. Civ. Code § 1782(a) via certified mail. Plaintiffs claim no damages under this count, but will amend this Complaint after expiration of the 30-day response period to seek money damages and punitive damages under the CLRA. At this time, Plaintiffs seek only injunctive relief and attorneys' fees under the CLRA as described above.

## FOURTH CAUSE OF ACTION

### FRAUD (INTENTIONAL MISREPRESENTATION AND OMISSION)

**(On Behalf of the Nationwide Class and California Class Against All Defendants)**

205. Plaintiffs restate the preceding allegations as if set forth herein.

206. Plaintiffs' individual claims are alleged under California law. Plaintiffs plead this claim in the alternative to the remaining claims.

207. Shein made false or misleading statements of fact concerning the existence and amounts of price reductions because, as explained above, (a) the reference prices misled customers into believing the products were previously offered for sale and/or sold on the Website at the higher reference prices on a regular basis for a reasonably substantial period of time, and (b) the advertised discounts are fictitious or exaggerated.

208. In addition, Shein had a duty to conspicuously disclose the truth about its pricing deception, including that (a) the reference prices advertised and published on the Website were not prices at which Shein's items had been offered and/or sold on the Website in the recent past on a regular basis for a reasonably substantial period of time, (b) Shein's products rarely (if ever) were offered or sold

CLASS ACTION COMPLAINT

anywhere at the advertised reference prices on a regular basis for a reasonably substantial period of time, and (c) the advertised reference prices are not indicative of market value.

209. Shein knew that its representations were false when made. Shein knew that the items Plaintiffs and the Class purchased had rarely, if ever, been offered or sold on the Website at the substantially higher reference price.

210. Shein's representations were made with the intent that Plaintiffs and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

211. Shein engaged in this fraud to the Plaintiffs and Class's detriment to increase Shein's own sales and profits.

212. Plaintiffs and the Class reasonably relied on Shein's representations. Absent Shein's misrepresentations, Plaintiffs and the Class would not have purchased the items they purchased from Shein or, at minimum, would not have paid as much for the items as they ultimately did. Plaintiffs and the Class's reliance was a substantial factor in causing them harm.

213. Had the omitted information been disclosed, Plaintiffs and the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Shein or would not have paid as much for the items as they ultimately did.

214. As a direct and proximate result of the above, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

215. Plaintiffs and the Class are also entitled to punitive or exemplary damages. Shein, through its senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiffs and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Shein's actions were fraudulent because Shein intended to and did deceive and injure Plaintiffs and the Class. Based on the allegations above, Shein's conduct was made with malice because Shein acted with the intent to and did cause injury to Plaintiffs and the Class, and because Shein willfully and knowingly disregarded the rights of Plaintiffs and the Class.

CLASS ACTION COMPLAINT

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT/QUASI-CONTRACT

**(On Behalf of the Nationwide Class and California Class Against All Defendants)**

216.    Plaintiffs restate the preceding allegations as if set forth herein.

217.    Plaintiffs' individual claims are alleged under California law. Plaintiffs plead this claim in the alternative to the remaining claims.

218.    California law permits a standalone claim for unjust enrichment, allowing the court to construe the cause of action as a quasi-contract claim. *Astiana v. Hain Celestial Group, Inc.,* 783 F.3d 753, 756 (9th Cir. 2015).

219.    California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020).

220.    California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable.

221.    Under California law, a stake in unjustly earned profits exists regardless of the plaintiff's actual loss.

222.    By its wrongful acts and omissions, Shein was unjustly enriched at the expense of and to the detriment of Plaintiffs and the Class and/or while Plaintiffs and the Class were unjustly deprived. Shein's unlawful and deceptive pricing scheme induced Plaintiffs and the Class to spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

223.    Plaintiffs and members of the Class also conferred a monetary benefit on Shein in the form of Shein's profits generated by the deceptive marketing scheme. Shein profited from inappropriately and artificially inflated prices.

224.    On behalf of the Class, Plaintiffs seek restitution from Shein and an order disgorging all deceptively obtained payments and profits.

CLASS ACTION COMPLAINT

225. Plaintiffs and the Class seek this equitable remedy because their legal remedies are inadequate. An unjust enrichment theory provides the equitable disgorgement of profits even where an individual has not suffered a corresponding loss in the form of money damages.

## SIXTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

**(On Behalf of the Nationwide Class and California Class Against All Defendants)**

226. Plaintiffs restate the preceding allegations as if set forth herein.

227. Plaintiffs' individual claims are alleged under California law. Plaintiffs plead this claim in the alternative to the remaining claims.

228. Shein made false or misleading statements of fact concerning the existence of and the amounts of price reductions because, as explained herein, (a) the advertised reference prices misled customers into believing the products were previously offered for sale and/or sold on the Website at the higher reference prices on a regular basis for a reasonably substantial period of time, and (b) the advertised discounts are fictitious or exaggerated.

229. In addition, Shein had a duty to conspicuously disclose the truth about its pricing deception, including that the reference prices advertised on the Website were not prices at which Shein's items were listed or sold on the Website in the recent past on a regular basis for a reasonably substantial period of time, and in truth, Shein's products are typically not offered or sold on the website (and/or in the marketplace) at the advertised reference prices.

230. Shein knew that its representations were false when made. Shein knew that the items Plaintiffs and the Class purchased had rarely, if ever, been offered or sold on the Website at the substantially higher reference price in the recent past. And Shein knew or should have known that the reference prices were not the prevailing market prices.

231. Shein had no good faith or reasonable basis to believe that its representations were true when made.

232. Shein's representations were made with the intent that Plaintiffs and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they

CLASS ACTION COMPLAINT

otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

233. Shein engaged in this deception to Plaintiffs and the Class's detriment to increase Shein's own sales and profits.

234. Plaintiffs and the Class reasonably relied on Shein's representations. Absent Shein's misrepresentations, Plaintiffs and the Class would not have purchased the items they purchased from Shein, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiffs and the Class's reliance was a substantial factor in causing them harm.

235. Had the omitted information been disclosed, Plaintiffs and the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Shein or, at the very least, would not have paid as much for the items as they did.

236. As a direct and proximate result of the above, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, respectfully pray for following relief:

a. Certification of this case as a class action on behalf of the proposed Class and any subclasses defined above, appointment of Plaintiffs as Class representative, and appointment of their counsel as Class counsel;

b. An award to Plaintiffs and the proposed Class and subclasses of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits Shein obtained from each Plaintiff and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

c. An injunction ordering Shein to cease the false advertising and unfair business practices complained of herein;

d. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Shein's conduct;

CLASS ACTION COMPLAINT

e.  An award of nominal, punitive, and statutory damages where available;

f.  Reasonable expenses and attorneys' fees;

g.  Pre- and post-judgment interest, to the extent allowable; and

h.  For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the proposed Class, demand a trial by jury for all claims so triable.


Dated: May 5, 2026              Respectfully submitted,


By: */s/ Alexander E. Wolf*

Alexander E. Wolf (SBN 299775)
awolf@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
T: (872) 365-7060

Gary M. Klinger (*pro hac vice* forthcoming)
gklinger@milberg.com
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
T: (866) 252-0878

Daniel O. Herrera (*pro hac vice* forthcoming)
dherrera@caffertyclobes.com
Christopher P. Dolotosky (*pro hac vice* forthcoming)
cdolotosky@caffertyclobes.com
**CAFFERY CLOBES MERIWETHER & SPRENGEL, LLP**
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
T: (312) 782-4880

CLASS ACTION COMPLAINT